May it please the Court, I'm David Keltner on behalf of the online travel companies, the OTCs. As you know, this is a statutory construction case, and while giving effect to the plain language of the statute is a cardinal rule of statutory construction, in construing tax ordinances, it is mandatory. Nonetheless, in this case, the District Court admitted it disregarded material terms of the ordinances in determining, one, what is taxed, and two, who collects and remits the tax. As a result, I think there are two reasons that the OTCs are entitled to judgment as a matter of law. First one is, the District Court decided that what is taxed issue is a pure question of Texas law, but it refused to follow the City of Houston opinion, which interpreted an identical Texas ordinance, and held that the amount the OTCs paid the hotel on the occupant's behalf was the amount that is taxed. Second issue, there's no evidence that the OTCs control hotels, and as a result, the ordinances do not apply to the OTCs. We call that the who issue. Let me discuss what first. Again, the District Court was very clear what he did. He decided this is a matter of pure Texas law, and that's what he said, and he said, under Texas rules of statutory construction. His words, not mine. We think he got it wrong for two reasons. First off, the City of Houston reaches the exact opposite conclusion, and secondly, he acknowledged that he directly wrote out of the ordinance the language to the hotel, which was crucial to the City of Houston's opinion. Now, City of Houston was decided 18 months before the first final judgment in this case was entered, and its rulings are pretty direct. First, it concluded that the ordinance imposed a tax on the amount paid to the hotel on the occupant's behalf for use of a room, and it said that the OTC's payment to the hotel on the occupant's behalf met that definition, but the payment of the occupant to the OTC did not. It rejected the same arguments that the cities raised and the District Court accepted. The District Court said that what was taxed was actually the amount the occupants paid to the OTCs. That was rejected by the City of Houston Court. Second, there were two, quote, absurd result rulings by the District Court. The first one was, well, since the occupant never pays the hotel, then the real truth of the matter is that that's an absurd result. You cannot interpret the statute that way. But what the City of Houston said is not right. Truth of the matter is by the occupant would include through or on behalf of, so a payment by the OTCs on behalf of the occupant supplied the statute. Second one was that the definition of hotels being buildings or facilities, that you would never pay a tax to a building or a facility. Well, the City of Houston Court said, now wait a minute, the statutes say that the definitions have the word ascribed to them okay, but the truth of the matter is if the context indicates a different meaning, you apply that, and that was the commercial establishment providing rooms, which really is the definition in any event. Now, the District Court, on the City's urging, decided not to apply the City of Houston for three reasons, and the Cities have now added in the recent letter to you a fourth. First, they said that the City of Houston opinion was limited to that ordinance and indicated and implied without saying it, actually, that there was some difference in the ordinances. Second, they said that the evidentiary records differed. Third, that the City of Houston opinion misapplied Texas statutory construction law. The Cities now say in the letter you just received last week that there were different legal arguments made in the City of Houston. We believe all that to be wrong. Let me show you why. First off, the ordinances are materially identical in this case. I mean, after all, City of Houston was a member of this class, and it was certified as a member of this class and later opted out. The Court held that all the ordinances, including Houston, was the same or substantially similar and that the City's legal arguments were identical. So I don't think that one works. Second, the evidentiary records are materially the same. But what difference would that make? Both courts applied legal theories. City of Houston was a motion for summary judgment case that was appealed. This court said he decided it as a matter of pure Texas law. The record would not make any difference. But regardless, and they talk about the month-long trial, it was on the issue of control on who is taxed, not on the what issue that the City of Houston dealt with. Nonetheless, the ordinances were in the record. The OTC testimony was in the record. The contracts between the hotels and the OTCs were in the record. I don't think there's any amount of evidence that you could have introduced in front of the Houston Court of Appeals to make them change their determination of the meaning of the ordinances. Mr. Keltner. Yes, sir. The City of Houston appellate court opinion notes that the City of Houston requested the court to take some sort of judicial notice or apply the findings and conclusions of law initially entered by the district court and declined to do so, I think, based on a lengthy footnote based on something about some sort of differences or whatever. But how do you pitch the fact that the City of Houston would not incorporate the findings and conclusions of the federal district court? Two ways, Your Honor. First off, and importantly, remember, the findings and fact and conclusions of law in the City of Houston were related somewhat to the what, but nonetheless, what the court said is either one or two things are true. Either everything is identical, and then we're looking at what the record is, or something is different, and that is something we couldn't consider. There is no doubt that the majority of the City of Houston's argument to the Houston Court of Appeals was based on the finding and fact of conclusions. The arguments were identical as well, the legal arguments. Now the cities tell you that they weren't. There was, in fairness, there is one difference. The City of Houston did not take on the issue or quarrel with the concept that tax statutes are strictly construed against the government. That is the only difference. And we'll admit that's a difference. We think that's correct. Now, finally, the statutory construction law, did the City of Houston Court of Appeals get that right? It did. Now, what they really complain about is, first they say is, well, they never considered the City of Houston's arguments or whether their interpretation was right. Factually, that's not true. Legally, there's a different reason for that. If you look at page 710, 712 of the opinion, you'll see the Court of Appeals addresses the City of Houston's argument. Mostly importantly, look at footnotes 5, 6, and 9, and they take on specific arguments, by the way, the same made here, and reject them one after another, including the comptroller's letters, which they find were based on different facts than what the true facts that were. In fact, they said the hypothetical facts in those opinions contradicted the undisputed facts. Those facts are the same ones we have here. Now, the legal thing, the next criticism that the city's convinced the district court to take is this, that once there was a determination that the taxpayer for the OTC's interpretation of the ordinance was reasonable, there was no need to determine whether the city's interpretation was reasonable too. Relying on Bullock v. Statistical Tabulations, a 1977 Texas Supreme Court case, here's basically what the court held. They said if the taxpayer's interpretation is reasonable and the government's is too, it is ambiguous, and if it's ambiguous, we interpret it against the government. So the taxpayer wins. Now, they say that's not Texas law, but in 2013, the Texas Supreme Court decided TRACFONE, also not dealing with this ordinance and just dealing with a different matter entirely, or different type of tax, but TRACFONE demonstrates the Court of Appeals got it right. Here's what they said. First, footnote 43, we affirm Bullock. Bullock v. Statistical Tabulations is the law. And they applied the same methodology as did the Court of Appeals in the city of Houston. And they said because the taxpayer's interpretation was reasonable, if also the government's was, it would be an ambiguous statute and have to be construed against the government, saying we've consistently applied the ancient taxpayer presumption that the reach of an ambiguous tax statute must be construed strictly against the government. Specifically, if you look at Heading Roman 2B on page 182, that precise tactic is made. Here's what the cities say. Cities say, well, that's not right. And the truth of the matter is, in this case, the OTCs were charged with collecting the tax. They're the government, and the presumption doesn't apply. TRACFONE proves that wrong, too. In TRACFONE, what happened was the providers of prepaid cell phones were directed, just like the OTC, I mean, excuse me, the hotels are here, to collect the tax. And they disputed the tax. And the presumption applied to the person collecting the tax and remitting it to the government. So that does not work. TRACFONE says a couple of other things that are important. It says that the tax must apply unequivocally from the face of the statute. Any gap-filling can't be done by courts but should be done by the legislature. And finally, when new technology is governed by statutes that did not anticipate that technology, and this is page 178 of the opinion, then what you do is the old statute may apply if it's broad enough to do so. But if it's not, it does not. Now, the real difference here, the real difference in these two cases, is the interpretation and method of interpretation by the district court in the city of Houston. Truth of the matter is, in this case, the district court specifically held that he ignored the language to the hotels, wrote that out of the statute and thought it would lead to an absurd result, and did it on the city's request. And, by the way, in the city of Houston, the court of appeals rejected that request. You know, and the law is, in Texas, it's just like it is in this circuit. Judge Barksdale, your opinion in U.S. v. Chin saying you avoid interpretations that write out a matter, a part of the statute or make it superfluous, is the same holding of the U.S. Medals v. Liberty Mutual and Spradlin v. Jim Walter Holmes. So I think those are those issues. I'm going to briefly talk about who and who pays the tax. It is an issue of control. Remember, not everybody is charged with remitting taxes. You have to own, operate, manage or control a hotel. There were no allegations. We did anything but control. Do you object to the jury instruction? Not on the issue of control. We did not. The judge, control is not defined in the ordinance at all, so we did not object. But the object of control, the object of the verb control, was hotels, which was defined exactly from the ordinance as a building, series of buildings or facilities providing sleeping accommodations. So you have to interpret control as to what the control was on. Just procedurally, before the charge to the jury, before the jury verdict, you did seek JMOL on this control issue. Yes, sir, we did. You sought it in your renewed motion for judgment. We did both before and after. That's exactly right, Your Honor. But you simply agreed that control, the definition of control, was for just the juror's everyday definition of control. Yes, Your Honor, and the way this court has traditionally reviewed that is by dictionary-type definitions. We think that's appropriate. The suggestion of the cities that you would look, and it could mean anything the jury wanted it to mean. Control could mean pig. That's not what the standard is at all. And, in fact, the jury was instructed on that and basically told to use their own understanding of plain and ordinary meaning, and I think that is important. The statute helps us a little bit there, though. In Section 3170C, dealing with reporting, the statute says that the person who must verify the report is the person in control of business operations of the reporting hotel. In other words, control of the operations at the hotel, not individual specific discrete items, as the cities argue. Your Honor, my time has expired. Unless you have questions, I'll await rebuttal. Thank you, sir. Thank you. Cruciani. May it please the Court, Gary Cruciani for San Antonio and the class of 172 Texas cities. I'd like to start by framing the two big-picture questions. The amount subject to tax and the fact that the OTCs are or are not required to collect and remit the tax. On the amount subject to tax, let's remember this is a hotel occupancy tax, and that's important that we're taxing hotel occupancy. And that raises the question, which of two transactions in a merchant model are subject to tax? The transaction between the OTC and the occupant, the retail transaction, or the wholesale transaction between the hotel and the OTC? Only one of those two transactions involves the occupant and involves the selling of occupancy, which is the retail transaction. The one that's in the hotel, not the OTC. The occupant occupies the room, obviously. Absolutely, no question about that. But what is taxed is occupancy, which is defined as the privilege of occupancy. And in a merchant model transaction, that privilege of occupancy is purchased at the time that that transaction takes place. What else is the OTC purchasing? The purchase price is what the hotel charges, not what this other separate booking company charges. Not correct. On the record in this case, what the hotel sets is that net rate. Let's call it $80. But what the OTC sets in its discretion is the retail rate. Let's call that the $100. And that is what is subject to tax. That doesn't go to the hotel. That doesn't pay for the occupancy. That has a profit margin in it for the booking company. That's all part of occupancy. You cannot opt out. You cannot just say I'm only going to pay the $80 and get a room. Call the hotel direct and get the $80 rate. That's wrong. That's real. That happens. Okay, but let me suggest to you how it would happen in comparable transactions, because this is one of our main points. There's no suggestion that the legislatures, or in this case the city councils, intended a two-tiered transaction where if you book, let me give you three examples, because I think this is important. I go to the hotel and pay $100 for that room. Tax is based on the $100. I book through an OTC using an agency model where all I have is a reservation. I don't pay the OTC anything. I have no contract with the OTC. I show up at the hotel. I pay them the same $100. OTC gets a back-end commission. That transaction also is taxed at the same $100 rate. It is only this artifice that the OTCs have created a merchant model where the example would be the OTC gets that room for $80, marks it up based supposedly on its services for $20, and charges the customer the same $100. Three folks checking in at the same time, each paying $100 for that room. Only under the merchant model is there a lower tax amount, this $80 tax amount. And the Texas Supreme Court instructs us in Calvert that we have to look at, quote, the essence of the transaction or the true object of the transaction. And it also instructs us that we need to look at the, quote, economic realities of the transaction. I would submit to you the economic realities of the transaction are, in each case if the customer is paying $100 to occupy that room, why would it be any lesser amount? It would be like going and buying a shirt at Macy's, and the sales tax being based on the price that Macy's paid to acquire that shirt. It's what the retail customer pays. It is a hotel occupancy tax. And that second transaction where after the occupancy occurs, the $80 let's say a month later is paid from the OTC to the hotel, that's not for occupancy. Occupancy has already occurred. That is a total post-occupancy transaction to which the occupant is not even a party. And to further the point, the OTCs don't charge separately for their services. You can search the Internet for free. You can search for three days to make a booking, or you can search for three seconds. It's the same charge. And by that analogy, Judge Clement, in terms of if it were $80 that would be due, the hotel provides those same services. What's wrong with the interpretation of the ordinances by the Texas appeals court? I'm sorry, by the Texas? Texas appeals court. Oh, yes. Well. That seemed to me to be very well thought out. Here's our main issue with the Houston Court of Appeals decision. We do believe that the Houston court got it wrong in one fundamental respect. It applied this one-side only rule of construction where it specifically states, as much as the OTCs tried to run from it, it says we do not consider whether Houston's interpretation is also reasonable. It would be as if, again, as if you read their opening brief, said that's reasonable, no need to read the city's brief, we're persuaded. You cannot tell sometimes whether an interpretation is reasonable unless you see the other side's viewpoint on that. So we believe that was the fundamental legal issue, and there is no case. What's wrong with that? That makes sense to me. Why should they have to clutter up their opinion going down another rabbit trail if the law has got to be construed strictly against the taxing body and in favor of the taxpayer? You never get to the rule of construction against the taxing body. That is a rule of last resort. You've applied all of the primary rules of construction. What is the intent of the legislation? What is the plain language? What is the overall context of this hotel occupancy tax? Would a ruling lead to absurd results? But most fundamentally, the court discussed all that based on the record before it. So that is, in response to your question, our most fundamental argument. Our position does not rise or fall on whether the city of Houston got it right. We could stipulate that the city of Houston, based on the factual record before it, got that decision right. The question is— It's not a question based on anything but the law, really. I would respectfully dissent on that, and don't take my words for it. If we take what they said the law is and apply it to this case, it seems to me that you would lose. I would say not. But let me say, again, going to the point, it is not a pure question of law. The Houston court, in its first words out of the box, very first sentence, says this. The outcome of each hotel tax case depends on the evidence introduced. And remember, that case did not involve the control issue. So Mr. Counter said, oh, this is just a pure question of law, the pay to the tax issue. The only issue before the Houston court was the amount subject to tax. And in deciding the amount subject to tax, it was a question of law based on the evidentiary record before it. You're not contending that the merchant—what do you call it? Merchant model. Merchant model was different in that case than the merchant model in this case, are you? The model itself, I agree, is the same, but it is what is the evidence that was submitted before the court. That is what was so fundamentally different. The evidence, we had 38 witnesses. They had the 28 of whom were OTC current or former witnesses. The other side, well, the city of Houston had no OTC witnesses that they submitted evidence on. And in fact, here's what they relied upon, and this is what the court says. The court said in Houston, the facts, and they put that in quotes, that Houston cites are in reality the findings of fact, conclusions of law of an administrative hearing officer in Anaheim, and the cited material does not merely lack probative value. It has no legal existence under Texas law. So that's what the city of Houston says. Here's these vacated findings in a city of Anaheim case. This is what we're relying on. And the Houston court rightly said, what are you talking about? That's not even evidence. And so it was critical. And let me give you just some differences, because what the trial court said in this case is the Houston court's decision treats this as if it's an agency model. And the agency model, again, is fundamentally different than the merchant model. And as a result, because it's treated as an agency model, its decision was influenced by that. And what the court in Texas said is the Houston court's description of the merchant model is diametrically opposed to much of the evidence herein, and more closely resembles the agency model. So let me give you some specific examples. I thought you just admitted that the merchant model was the same in both cases. The merchant model, from the OTC's perspective, their merchant model operates nationwide, not only in these two cases, but nationwide. It is the same merchant model. But the question is, what is the evidence on how that merchant model actually operates? What evidence was before the Houston court versus the Texas court? And that's where the Houston court itself says this case turns on the evidence before us, not on the evidence before San Antonio, not on the evidence before any other court. So the evidence was diametrically opposite. On the most fundamental level, the Houston court talks about a reservation. And as if you're in that, they're using an agency model concept when talking about a reservation. What they say is, in Houston, the hotels offer occupancy in exchange for the payment of the discounted rate. While the OTCs merely have websites and provide information. That is not the evidence in San Antonio. It's not that the OTCs merely have websites and provide information. The evidence was, in a merchant model transaction, the OTCs are the ones that convey the right to occupancy. And that is critically important. Again, this is a hotel occupancy tax. Now you're saying the merchant model was different in this case than. No, sir. What I'm saying, if you step back, forget about any litigation. The OTCs, in fact, operate the merchant model the same in every jurisdiction. That's not a dispute. But the question is, we've got to present the trial court with evidence. How, in fact, does that model operate? So what you had in Houston was a one-sided presentation by the OTCs who said, here's how it operates. We don't have occupancy to sell. We don't handle the cancellation policies. We don't collect taxes. Okay? In our case, we showed they do have occupancy to sell. They do collect taxes. They do have their own cancellation policies. All of those control factors, all of those factors that go to what is occupancy. So I cannot stress enough. And the Houston court said in three different times, including in its closing, began and ended. Here's what the Houston court said in ending, Judge Dennis. It said this. And, again, just going back to let me address also the OTC case. People testify in your case, in this case. Twenty-eight witnesses. And didn't they describe the same model that is described in the city of Houston case? Very different. The OTC's testimony was spin. The spin that was unrebutted in Houston. Again, the spin, let me just take an easy example, because this goes to the control issue, the collecting taxes issue that's at least an issue in our case. The OTC say, we don't collect taxes. Well, of course they collect them. They collect 100% from the occupant. So on that issue, that was the only evidence before the Houston court. The OTCs do not collect taxes. In our case, we had all of the OTC witnesses on cross-examination have to admit, as well as the three hotel witnesses, Mr. Rubinacci, Mr. Schweitzer, Miss Ginty, and their expert, Mr. Anderson, they all admitted the OTCs collect taxes. So that's one example on a critical issue. And I could go down the line on 20 different examples where the evidence was simply starkly different. What disturbed me is that the district court and you seem to be substituting the OTC for the hotel operators and making the OTC collect the tax and pay the tax on their markup. And the ordinance simply does not support that. It could be you could have an ordinance or a law that made the OTC collect tax. But this ordinance is just like the one in the city of Houston case. It doesn't impose that duty on the OTC. It imposes it on the hotel owner operator. That's who has to collect the tax and remit it. And, you know, this was not a novation. In other words, nobody agreed to substitute the OTC for the hotel owners and operators and let them off the hook as to the liability for the tax. We agree it's not a novation. The taxing body would have to agree to that, too. And they didn't agree to that. And they didn't amend their ordinance to make the tax occur when the OTC got the money. We agree it's not a novation. And we don't agree that the hotel's off the hook. The one who owns, operates, manages, or controls, whoever that is, is responsible for collecting the tax. The hotel, if the tax ultimately doesn't get paid and you have the hotel owner, they remain responsible for remitting the tax to the city. It's joint and several liability in our view. If the OTCs, as the jury found, and there's a big burden that the OTCs have to overcome to disturb that finding, we think they haven't even challenged the jury finding because they never mention it in their opening brief. They don't have to challenge the jury finding. They're here on challenging the denial of judgment as a matter of law. Well, they didn't raise the jury finding in their opening brief. Okay, but let's get back there. Let's just go to the sufficiency of the evidence. Was there sufficient evidence that the OTCs control the hotels and, therefore, were required to collect and remit? And there was a wealth of evidence to that fact. And let's remember, it's not like they're not already doing it. That's why they fought so hard to say they didn't collect taxes. As a matter of fact, they collect my $100 and they collect the taxes associated with that $100. So it's not like if you find them responsible for collecting taxes that you're imposing a duty upon them that they've not already voluntarily assumed. They are collecting taxes. Undisputed, unequivocal, they're doing that. So as a matter of fact, and that's what the Georgia Supreme Court in the Expedia case says is, hey, we're not even saying you owe this as a matter of law, that you're required to collect as a matter of law, but as a matter of fact, you're collecting, and since you've assumed that duty, we're going to hold you to it. All right? So you're not imposing a new duty on them, number one. They're already doing it. And the evidence fully supports the fact that they're collecting as the tax based on the occupancy rate given by the hotels. Presently. In the past, they changed that practice. So de jure, that is absolutely right presently. De facto, they collect an amount equal to and greater than the tax on that markup, the $20. They call it a taxes and fees. That first line, by the way, in my example, would show $100 room rate. They represent to the world that the rental rate is $100. Not $80. $100. If you book online, there's a three line detail. Shows $100. That's the amount we say is subject to tax. And that's what they do. Before you finish and don't have much time left. Sure. These ordinances, and I don't recall the dates, when were most of these ordinances enacted? Were any of them enacted after, say, 1995? The enabling act, as I recall, was passed in 1987. And I believe most of the ordinances followed close on the heels of that. They were pre-computer revolution and pre-these OTCs being pre-merchant model. That is correct. Why isn't the solution for the cities to go back and revise their ordinances? Because there's no need to. We would submit that in every case it is based upon what the occupant pays for the room, the $100. By merely inserting, oh, you're suggesting, Judge Barksdale, by inserting the OTCs, stepping into the shoes of the tax collector. So instead of that $100 going directly to the hotel, the OTC intercepts it. They get that $100. They keep $20. And they pass the $80 on to the hotel. Your suggestion is simply because they've created a new model. And it's not even really technology. You don't need an internet-based model to do this. But by creating a new business model that somehow that can frustrate the economic reality of this transaction, which is to tax that $100 amount. And what would the cities need to do to change that? The cities' ordinances all tax the privilege of occupancy. And if I may just on my last argument just briefly address the pay to the hotel language, that is simply a way of saying we've got a payor, the occupant, a payee, the hotel. Some ordinances like Dallas and Houston are written that way. Other ordinances leave out who the occupant and the payer and just say we're taxing the consideration for the room. I would simply submit that it doesn't matter whether you identify the payor and the payee or just say we're taxing the consideration for the room. It still should be the $100 tax amount. And I see my time is up. Thank you, sir. Mr. Keltner, you have five minutes on rebuttal. Thank you, Your Honor. In brief response, Judge Barksdale, in response to your question about why don't the cities amend, several have. New York, North Carolina as a state, Baltimore, Oregon have all done that to cover the merchant model issue, and that's important. One of the questions that came up, and I'm going to try to do this chronologically. It may not work. But one of the questions that came up of what Mr. Cruciani said was, well, the people staying in hotels paying different rates. As the almost first line of the city of Houston opinion, that's right, and that happens all the time. Last night, several of us stayed in a hotel. Because of my age, I got an AARP rate. Others, interestingly, I later learned, got a loyalty reward rate from an airline. There are all kinds, and others, you could possibly pay a travel agent, you could do all those kinds of things. But the consistent thing is this. The amount the hotel receives is what is taxed. And especially the San Antonio ordinance makes that clear in the 33, 60, and 70 series of their ordinance, where they point out that it is the hotel that has to report on all rooms left at the hotel. And obviously there are going to be differences, but the consistency is what is under the statute of what the hotel receives. It is not as if all hotel reservations are made through online travel companies. In fact, the evidence in this case is undisputed. Less than 5 percent of all reservations are OTC reservations. For Hilton, it's between 3 and 4 percent. So it's not as if it is a pervasive thing that is overriding hotels. Mr. Cruciani mentioned the essence of the transaction case. I must point you again to another Texas Supreme Court case. It is Combs v. Healthcare Services, decided in 2013 right after track phone. And it said at page 627 and 628 that you don't look to the essence of the transaction if those words aren't used in the statute. You don't look, as the Court said, to the words primary purpose unless those words are in the statute. His issue about, well, economic realities is from the Rourke Entertainment case. And in that case, what the Supreme Court said was used, there was a prize in a little vending machine where it had a claw to drop down and grab things and brought them up. And the question was whether the prize was necessary to the operation of the machine. That was the economic reality, and there was a sales tax deduction on that under another provision. It doesn't deal with this, and actually Combs v. Healthcare Services came afterwards. Could you address the contention that the city of Houston isn't applicable because it was based on different facts? Your Honor, I don't know exactly what to say to that except this. It was a summary judgment case. In the record were two things. We had 150 pages from seven OTC witnesses, 200 pages from 11 more OTC witnesses, 13 hotel contracts, and the ordinance. To interpret the ordinance, that is pretty much what you need. The issue, remember, in this month-long trial here was on control. And as you heard Mr. Cruciani say, and he's absolutely right, control was not addressed by the city of Houston, only the what-is-tax issue. Judge Dennis, you asked a question on the novation issue, and I think basically what you're asking is, is the collection of taxes itself, does it have some factual or legal relevance? The Expedia v. City of Columbus case deals solely with a different ordinance, and it is the Columbus ordinance, and I'm going to quote from it. Persons or entities collecting the tax from a hotel or motel guest shall remit the tax. There is nothing in any of these ordinances, not one, that says what the City of Columbus tax does. In fact, the Texas Comptroller says if you charge a tax collection fee to one person and pass it on to the other, that's not the same thing as collecting a tax. That's page 21 of our brief footnote 83. Bottom line is, we thank the City of Houston Comptroller. Thank you. Thank you, sir.